UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD G. WILLSON,

                                 Plaintiff                    DECISION AND ORDER

-vs-

                                                        6:19-CV-6206 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                Defendant.

_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Richard Willson for Social Security Disability Insurance ("SSDI") benefits. Now before the Court is Plaintiff's motion (ECF No. 13) for judgment on the pleadings and Defendant's cross-motion (ECF No. 16) for the same relief. For the reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and this action is dismissed.

STANDARDS OF LAW

The Commissioner decides applications for SSDI benefits using a five-step sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant

1

has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[1] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West). In relevant part, Section 405(g) states that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will

---

[1] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); see also, *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

3

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary for purposes of this Decision and Order.

Plaintiff, who previously worked as a parts salesman at several automobile dealerships, claims to have become disabled on May 28, 2014, primarily due to mental impairments. Plaintiff has a history of depression and has made suicidal gestures on two occasions, the first of which involved him setting his house on fire while intoxicated.[2] Plaintiff suffered burns to his legs in that incident, requiring skin grafts, and was later convicted of arson and incarcerated for four months. Since that time Plaintiff has not attempted to work, purportedly due to depression and anxiety.[3] Plaintiff also has physical impairments, primarily consisting of back pain and knee pain, that are

---

[2] Plaintiff also has a history of chronic alcoholism and cocaine abuse, but his substance abuse problems are reportedly in remission. Administrative Transcript at pp. 356, 379, 392-93, 422.
[3] Administrative Transcript at pp. 31-35, 39.

4

exacerbated by activities such as shoveling snow.[4]

On May 26, 2015, Plaintiff applied for disability benefits due to depression, anxiety, back pain and left knee pain.[5]  On December 17, 2017, Plaintiff's attorney submitted a pre-hearing brief to the Administrative Law Judge ("ALJ"), similarly listing four impairments: depression, anxiety, low back pain and knee pain.[6]  Although, at the hearing, when the ALJ asked Plaintiff why he was physically unable to work, Plaintiff mentioned only an inability to lift due to back pain.

On March 26, 2018, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date of the decision.[7]  Applying the familiar five-step sequential evaluation set forth earlier, the ALJ found that: Plaintiff had not engaged in substantial gainful activity since the alleged onset date; Plaintiff had severe impairments consisting of depression and anxiety; Plaintiff had other impairments that were not severe, including degenerative changes in his neck, back and knee, ulnar nerve neuropathy, hypertension, hyperlipidemia and ,substance abuse; Plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment; Plaintiff had the RFC to perform work "at all exertional levels" but with limitations, cause by non-exertional impairments, consisting of "simple, routine tasks[,] occasional decision-making[,] occasional changes in the workplace and occasional superficial interaction with the public"; Plaintiff was not able to

---

[4] See, e.g., Administrative Transcript at p. 190 (Referring to back pain during extended physical activity).
[5] Administrative Transcript at pp. 55, 61.
[6] Administrative Transcript at pp. 205-206.
[7] The ALJ, the Hon. Timothy Belford, issued his decision following a hearing at which Plaintiff appeared with an attorney, and at which both Plaintiff and a vocational expert ("VE") testified.

5

perform his past relevant work; but considering Plaintiff's age (55), education (high school), work experience and RFC, there were other jobs that Plaintiff could perform.

Plaintiff contends that the ALJ's determination must be reversed because it contains legal error and is not supported by substantial evidence. More particularly, Plaintiff alleges that the ALJ erred by finding that his "back, neck, knee, and left upper extremity impairments were nonsevere"; by failing to consider those same non-severe impairments when determining RFC; by failing to develop the record to fill obvious gaps in the evidence; and by failing to properly consider the effect of stress on his ability to work.

The Commissioner disputes all of Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

## DISCUSSION

<u>The ALJ Did Not Err by Failing to Evaluate the Nature of Plaintiff's Stress</u>

Plaintiff contends that Social Security Ruling ("SSR") 85-15 required the ALJ to evaluate the nature of Plaintiff's stress when making an RFC determination. Plaintiff argues that the ALJ failed to do so, and improperly accounted for Plaintiff's stress by merely limiting him to simple low-stress work. However, that argument lacks merit since SSR 85-15 does not apply in cases such as this where the claimant is alleging both physical and mental impairments. *See, e.g., Estrella v. Berryhill*, No. 17-CV-3838(AMD), 2019 WL 1367757, at *3 (E.D.N.Y. Mar. 26, 2019) ("This regulation does not apply to this case, because the plaintiff suffers from both exertional and nonexertional limitations; SSR 85-15 applies only to claimants with solely nonexertional

6

limitations. *See Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012)[.]"); *see also, Wyder v. Colvin*, No. 1:16-CV-00817-HBS, 2018 WL 3866669, at *4 (W.D.N.Y. Aug. 15, 2018) ("District Courts within the Second Circuit have applied the *Roma* Court's interpretation of SSR 85–15.") (collecting cases).

In any event, the ALJ properly considered Plaintiff's stress and accounted for it, when making his RFC determination, by limiting Plaintiff to simple, routine tasks requiring only occasional decision-making, occasional changes in the workplace and occasional superficial contact with the public.   At the hearing, in response to questions from both the ALJ and Plaintiff's attorney, Plaintiff described the nature and causes of his stress and anxiety.[8]   For example, after Plaintiff indicated that he could not return to his past work due to the "stress" of it, the ALJ asked Plaintiff what he meant by that, and Plaintiff indicated that it was "the fast paced aspect of it," "understaffing," "having to answer the phone constantly," and dealing with "technicians" and the "general public."[9]

In the ALJ's written decision, he specifically discussed Plaintiff's anxiety and ability to handle stress, noting that, according to treating psychiatrist Susan Chlebowski, M.D. ("Chlebowski"), Plaintiff had only "moderate" limitations in "adapting or managing himself,"   "dealing with normal work stress" and dealing with "stress of semiskilled and skilled work," with "moderate" defined as "the individual's functioning in the area independently, appropriately, effectively and on a sustained basis if fair."[10]   Chlebowski also indicated, though, that Plaintiff would have no limitation in understanding and

---

[8] Administrative Transcript at pp.
[9] Administrative Transcript at p. 39.
[10] Administrative Transcript at pp. 14, 17, 484-485.

7

remembering simple instructions, and would have only mild limitations in interacting with other people, carrying out simple instructions, maintaining attention, performing at a consistent pace and making simple work related decisions.  The ALJ further noted that according to consultative psychologist Yu-Ying Lin, Ph.D. ("Lin"), Plaintiff's "difficulties" were caused by stress and lack of motivation, and that he was moderately limited in dealing with stress, but that he could nevertheless, and "without limitation," follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, relate adequately with others, learn new tasks and maintain a regular schedule.[11]   Based upon all of the foregoing, the Court finds that Plaintiff's argument on this point lacks merit.

>     Even Assuming that the ALJ Committed Error at Step Two
>     With Regard to Plaintiff's Physical Impairments, the
>     Error Was Harmless

Plaintiff next maintains that the ALJ erred at the second step of the sequential evaluation by finding that all of Plaintiff's physical impairments were non-severe.  In particular, the ALJ found that Plaintiff's back pain, neck pain, knee pain and left ulnar neuropathy were all non-severe impairments, "based upon duration."  Although, with regard to the back, neck and knee ailments, it appears that the ALJ actually found them to be non-severe based on the fact that they did not result in any significant pain or limitation.[12] Plaintiff is correct, however, that the ALJ purportedly found all of those

---

[11] Administrative Transcript at p. 393.
[12] The ALJ's use of the phrase "based on duration" in that regard is odd, since his immediately preceding discussion focused on the fact that the neck, back and knee impairments did not appear to affect Plaintiff's ability to perform basic work activities, since they did cause any significant degree of "pain" or "deficits."   The ALJ did not discuss the duration or expected duration of those ailments.   The ALJ found

8

impairments to be non-severe, "based on duration."   Plaintiff contends that the ALJ erred in that regard, stating:

> It is reversible error for an ALJ to find an impairment non-severe because it does not meet the 12-month duration requirement.   An impairment's severity is not the same as, nor is it dependent upon, its duration.

Pl.'s Mem. of Law, ECF No. 13-1 at p.11 (citation and internal quotation marks omitted).

The Commissioner denies that the ALJ erred in that manner, but nevertheless contends that any such error would be harmless, since the ALJ went on to find that Plaintiff's physical impairments posed no limitations on his ability to work, after "consider[ing] Plaintiff's medical evidence regarding his physical impairments" and the opinion of consultative examiner Mohamed Zaman, M.D. ("Zaman") "that [Plaintiff] had no physical restrictions[.]"[13]   Plaintiff maintains, however, that the ALJ did not consider the physical impairments at the subsequent steps of the sequential evaluation.[14]

The Court agrees with the Commissioner that any error by the ALJ at step two of the sequential evaluation was harmless.   An ALJ's error at step two of the sequential evaluation may be harmless if the ALJ continues through the remaining steps and considers the impairment that was omitted at step two. *See, Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) ("[Plaintiff] claims that the ALJ's step two analysis

---

that Plaintiff's left ulnar-nerve neuropathy was also non-severe "based on duration," stating: "Records of Dr. Lis-Hyjeck only recently, within two months of the hearing, only recently documented left ulnar nerve neuropathy.   I find the ulnar nerve neuropathy non-severe based upon duration."   Before making that finding, the ALJ does not seem to have considered whether the neuropathy was a medically determinable impairment that affected ability to perform work activities, or whether the condition could be expected to last twelve months; he only indicated that the condition had been diagnosed very recently.
[13] Def.'s Mem of Law, ECF No.16-1 at pp. 21–22.
[14] *See*, Pl.'s Mem. of Law, ECF No. 13-1 at p. 10 ("The ALJ committed reversible step two error in finding none of Plaintiff's physical impairments [severe] *and proceeding to neglect the effect of those impairments throughout the balance of the sequential evaluation.*") (emphasis added).

was deficient because the ALJ excluded her anxiety disorder and panic disorder from his review. . . . [A]ny error would be harmless. At step two, the ALJ identified other "severe impairments[,]" and therefore proceeded with the subsequent steps. And, in those subsequent steps, the ALJ specifically considered her anxiety and panic attacks. Because these conditions were considered during the subsequent steps, any error was harmless.") (citation and internal quotation marks omitted).

Here, the ALJ considered Plaintiff's pain of the neck, back and knee at the subsequent steps of the sequential evaluation and found that Plaintiff had no exertional impairment. For example, the ALJ noted, when making his RFC determination, that Plaintiff had not mentioned his knee during the hearing, and that Plaintiff was not currently receiving any treatment for his back pain, except for using over the counter pain medications and ice packs as needed.[15] Further, the ALJ observed that Plaintiff had reported being able to shovel snow.[16] Additionally, the ALJ discussed how consultative examiner Mohammed Zaman, M.D., "considered the claimant unlimited in terms of physical restrictions," and how Zaman's opinion was consistent with the findings of Plaintiff's own treating sources, including those of Kenneth Mathis, RPA ("Mathis").[17] In that regard, on February 22, 2016, Mathis performed a full physical examination and reported no abnormal findings whatsoever, including no problems with the back, neck, upper extremities or lower extremities.[18]

---

[15] Administrative Transcript at p. 15.
[16] Administrative Transcript at p. 16.
[17] Administrative Transcript at p. 17. Mathis summarized the exam as "adult medical examination without abnormal findings." *Id.* at p. 409.
[18] Administrative Transcript at pp. 405–410.

The ALJ did not expressly mention left-ulnar nerve neuropathy at the subsequent steps of the sequential evaluation, but the Court nevertheless finds that any error related to that condition was harmless, since the ALJ found that Plaintiff had no physical limitations, which would include any limitations related to the ulnar-nerve, and that finding is supported by substantial evidence.[19]   Beyond that, the Court notes that Plaintiff never listed "left ulnar-nerve neuropathy," or any other ailment of the hand or arm, as a basis for his disability claim, and has not identified any functional limitations related to that condition.   In January and February of 2015, Plaintiff complained to his primary care doctor concerning some minor aching, numbness and tingling in his left hand, along with "trigger finger" in his left ring finger.[20]   However, there is no indication that those complaints caused Plaintiff any limitation.   Moreover, when Plaintiff filed his disability application a few months later, he claimed to be disabled due only to depression, anxiety, back pain and knee pain.[21]   On October 30, 2015, Plaintiff completed a disability report that focused almost exclusively on depression and anxiety; the report did not mention any physical problem except "occasional knee or back pain."[22]   On January 15, 2016, at a consultative internal medicine examination

---

[19] The evidence mentioned earlier that supports the ALJ's exertional RFC finding, such as the findings by Mathis and Zaman, are not "stale" with regard to the left ulnar nerve neuropathy merely because they were written prior to the 2017 diagnosis of left ulnar nerve neuropathy.   Plaintiff admits that the left arm/hand symptoms that led to the 2017 diagnosis had existed for years before the official neuropathy diagnosis was made. *See*, Pl.'s Mem. of Law, ECF No. 13-1 at p. 11 ("[T]here is evidence in the record that plaintiff had left hand complaints long before being officially diagnosed with left ulnar neuropathy in November 2017."). Consequently, Plaintiff already had the condition when Mathis and Zaman performed their physical examinations.   In any event, there is simply no evidence of functional limitations from the condition. .
[20] Administrative Transcript at pp. 354–56, 365, 367.
[21] Administrative Transcript at p. 55.
[22] Administrative Transcript at p. 168.

performed at the Commissioner's request, Plaintiff reported problems with his back and knee, but did not mention any problem with his upper extremities.[23]   On December 17, 2017, Plaintiff's attorney filed a pre-hearing brief that listed depression, anxiety, low back pain and left knee pain as impairments, but did not mention arm or hand limitations.[24]   At the hearing, when asked why he could not return to work, Plaintiff referenced depression, anxiety and back pain, but did not mention any problem with his upper extremities.   The only reason that left ulnar-nerve neuropathy is mentioned in this action is because at the close of the hearing the ALJ directed Plaintiff's attorney to obtain the most recent records from Plaintiff's primary care physicians at Manhattan Square Family Medicine, and contained within those records was a reference to a diagnosis of neuropathy, based on Plaintiff's complaint of tingling in his left hand after he propped his forearm against a desk while using a computer.[25]   The ALJ accepted the late-filed records and listed ulnar-nerve neuropathy as one of Plaintiff's impairments at step two of the sequential evaluation.   However, there is no allegation or indication that the condition caused Plaintiff to experience any work-related limitations.[26]

For the foregoing reasons, the Court concludes that even assuming the ALJ erred at step two of the sequential evaluation, the error was harmless.   To the extent Plaintiff contends that the ALJ failed to consider all of his physical impairments at the subsequent steps of the sequential evaluation, or that the ALJ's findings regarding

---

[23] Administrative Transcript at pp. 396–399.
[24] Administrative Transcript at p. 206.
[25] Administrative Transcript at pp. 468–469.   This medical appointment took place on November 6, 2017, approximately two months prior to the administrative hearing.
[26] Indeed, the office note in which this diagnosis was made reports that Plaintiff had full hand strength bilaterally. Administrative Transcript at p. 469.

exertional impairments are unsupported by substantial evidence, the arguments lack merit.

### The ALJ Fulfilled His Duty to Develop the Record

Lastly, Plaintiff maintains that reversal is required because there were two "obvious gaps in the record" which the ALJ should have filled by obtaining additional records. In that regard, Plaintiff contends, first, that there were "clear indications in the record that important treatment notes" from psychiatrist Chlebowski "were missing," since Chlebowski submitted a medical opinion, but the record contains no notes from office visits with her. Second, Plaintiff asserts that unspecified "disability paperwork" containing a medical opinion from treating physician Karolina Lis-Hyjek, M.D. ("Lis-Hyjek") must be missing from the record, since one of Lis-Hyjek's office notes, dated January 31, 2017, contains, under the heading "MDD(Major Depressive Disorder)," the notation, "Disability paperwork filled out today. Patient currently unable to engage in any activity outside of therapy given severity of symptoms and ongoing therapy."[27] Lis-Hyjek's notation evidently refers to a disability exemption from work requirements for public assistance benefits, since her notes further state: "On disability for severe mental illness and currently transferring his case from Livingston County to Monroe County."[28]

It is of course well settled that an ALJ has a duty to develop the record in certain

---

[27] Administrative Transcript at p. 472.

[28] Administrative Transcript at p. 475. In that regard, Plaintiff was evidently receiving public assistance benefits, since he was not working and had no other means of support, but lived by himself in an apartment. See, N.Y. Soc. Serv. Law § 332 (McKinney) ("In accordance with federal requirements and this title an applicant for or a recipient of public assistance shall not be required to participate in work activities if such individual is determined by the social services district to be exempt because he or she is: (a) a person who is ill, incapacitated or sixty years of age or older or deemed to be disabled pursuant to section three hundred thirty-two-b of this title;").

13

instances, and that the ALJ's failure to do so may warrant a remand:

> Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal. The ALJ's duty to develop the record reflects the essentially non-adversarial nature of a benefits proceeding. An ALJ's failure to develop the record warrants remand.

*Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (citations and internal quotation marks omitted). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Guillen v. Berryhill*, 697 F. App'x 107 at 108.

Here, the ALJ did not err since there were no obvious gaps in the record. To begin with, the hearing transcript refutes Plaintiff's suggestion that there are missing treatment records from psychiatrist Dr. Chlebowski. Specifically, Plaintiff testified that he never met with a psychiatrist while treating at Venture Pros, where Chlebowski is employed; indeed, Plaintiff expressed the opinion that Venture Pros had "failed" him in that regard, since he was supposed to meet with a psychiatrist but never was allowed to do so.[29] Indeed, it clearly appears that Chlebowski prepared her report based upon her review of the office notes from Plaintiff's therapist, Daniel Fee, LCSW ("Fee"). In that regard, Plaintiff's attorney (not her current attorney) obtained a report from Dr. Chlebowski at the direction of the ALJ, who, at the close of the hearing, directed the attorney to try to do so, stating:

> I know that he's not seeing an acceptable source right now, for the mental

---

[29] Administrative Transcript at p. 37.

14

> health issues, but he has been in regular therapy with Mr. Fee.   If that therapist would be willing to issue an opinion, or any type of statement, that would obviously be helpful to get some insight to the – but he's [Fee] probably the best physician [sic], as far as providers go, to indicate what his capacity is at this point.   So, . . . then if Mr. Fee, *or if there is another individual, or supervising medical doctor at that facility who'd be willing to make a statement*, I'd obviously be interested in that.

Administrative Transcript at p. 52 (emphasis added).   Plaintiff's attorney then obtained the statement from Dr. Chlebowski, as the "supervising medical doctor" at Fee's facility. From all of this, the Court concludes that Plaintiff's contention, that there must be missing office notes from Dr. Chlebowski, lacks merit.

Plaintiff's argument about missing records from Dr. Lis-Hyjek similarly lacks merit.   According to Lis-Hyjek's office note, any opinion that she expressed to county social services related to Plaintiff's depression, not any physical impairment.[30] However, Plaintiff testified at the hearing that Lis-Hyjek was not directly involved in his mental health treatment.   Specifically, Plaintiff testified:

> Q. All right, and you talk to her about mental health issues as well?
>
> A. Yes, not in great detail.   She will ask me how I'm doing, and I tell her I'm just muddling along.
>
> Q. And, [is] she involved with any of the treatment for the mental health situation?
>
> A. No.

Administrative Transcript at p. 43.   In any event, Lis-Hyjek's office note also

---

[30] Administrative Transcript at p. 475.

15

summarized the substance of her opinion, which was that Plaintiff was unable to work because of the severity of his symptoms.[31] The ALJ considered that opinion and found that it was entitled to only little weight, a finding that Plaintiff does not challenge in this action.[32] Consequently, Plaintiff's argument that the ALJ committed reversible error by failing to obtain the aforementioned "disability paperwork" lacks merit.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is denied, Defendant's cross-motion (ECF No. 16) for the same relief is granted, and this matter is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
       September 2, 2020

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[31] Administrative Transcript at p. 472 ("Patient currently unable to engage in any activity outside of therapy given severity of symptoms and ongoing therapy.").
[32] Administrative Transcript at p. 17.